UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES *ex rel*,
FAKHREDDIN ENTEZARY, M.D.,
c/o Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, RI 02903
(401) 331-5700,

Relator,

BRINGING THIS ACTION ON
BEHALF OF THE UNITED STATES
OF AMERICA,
c/o Robert Corrente, Esq.
United States Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000,

and,

c/o Alberto Gonzales, Esq.
United States Attorney General
United States Department of Justice
10th & Constitution Avenues, N.W.
Washington, DC 20530,

Plaintiffs,

v.

NATE WHIPPLE RADIOLOGY, INC.,
DAVID GUNASTI, MD., LINCOLN
URGENT CARE CENTER, INC.,
JOHN J. SOLOMON, JR., M.D. and
FRANK D'ALLESSANDRO, M.D.,

Defendants.

05 423 S

C.A. No. 05-

FILED UNDER SEAL PURSUANT
TO 31 U.S.C. § 3730 (b)(2)

**COMPLAINT AND JURY DEMAND**

## Nature of the Action

1. This is an action brought by *qui tam* Relator Fakhreddin Entezary, M.D. ("Dr. Entezary" or "Relator") pursuant to 31 U.S.C. § 3729 *et seq.* (the "False Claims Act"), 42 U.S.C. § 1320(a)-7(b) (the "Medicare Fraud and Abuse Anti-Kickback Statute" or the "Anti-Kickback Statute") and 42 U.S.C. § 1395nn (the "Stark Law"), in his own name, and in the name of the United States of America, to recover penalties and damages arising from an illegal kickback scheme which, pursuant to well-established Federal law, has resulted in the submission of fraudulent claims for payment to the United States Government.

2. The basis of the action is a scheme whereby Defendants John J. Solomon, Jr., M.D. ("Dr. Solomon"), Frank D'Allessandro, M.D. ("Dr. D'Allessandro") and Lincoln Urgent Care ("Lincoln Urgent Care") agreed to refer their Medicare eligible patients in need of radiological services to Defendants Nate Whipple Radiology, Inc. ("Nate Whipple Radiology") and David Gunasti, M.D. ("Dr. Gunasti"), its principal, in exchange for the agreement of Nate Whipple Radiology and Dr. Gunasti to assume the lease of an outdated, obsolete, and expensive piece of medical equipment from Lincoln Urgent Care, the medical practice owned by Dr. Solomon and Dr. D'Allessandro.

3. It is asserted herein that this conduct, as described in greater detail below, is violative of the Anti-Kickback Statute and the Stark Law. Further, because it is now well-established that violations of the Anti-Kickback Statute and Stark Law are redressible under the False Claims Act, Relator brings this action.

**Parties**

4. Relator Fakhreddin Entezary, M.D. is a physician and a resident of Lincoln, Rhode Island. Dr. Entezary is an hourly employee of Nate Whipple Radiology.

5. Defendant Nate Whipple Radiology is a medical practice located in Lincoln and Cumberland, Rhode Island.

6. Defendant Dr. Gunasti is a physician and a resident of Lincoln, Rhode Island. Dr. Gunasti is the owner and principal of Nate Whipple Radiology.

7. Defendant Lincoln Urgent Care is a medical practice located in Lincoln, Rhode Island.

8. Defendant Dr. Solomon is a physician and a resident of Lincoln, Rhode Island. Upon information and belief, Dr. Solomon shares ownership and management of Lincoln Urgent Care with Defendant Dr. D'Allessandro.

9. Defendant Dr. D'Allessandro is a physician and a resident of Lincoln, Rhode Island. Upon information and belief, Dr. D'Allessandro shares ownership and management of Lincoln Urgent Care with Defendant Dr. Solomon.

**Jurisdiction and Venue**

10. This action arises under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, the Medicare Fraud and Abuse Anti-Kickback Statute, 42 U.S.C. § 1320(a)-7(b), and the Stark Law, 42 U.S.C. § 1395nn.

11. Jurisdiction over this action is conferred upon this Court by 31 U.S.C. § 3732(a) and 28 U.S.C. § 3130 in that this action arises under the laws of the United States.

12. Venue is proper in the United States District Court for the District of Rhode Island, pursuant to 28 U.S.C. § 1391(b) and (c), 31 U.S.C. § 3732(a) because Defendants reside in and transact business in this District, and the conduct that forms the basis for this Complaint occurred in this District.

**Facts Common to All Counts**

13. In 2002, Relator Dr. Entezary sold Nate Whipple Radiology, his practice, to Defendant Dr. Gunasti, who incorporated it under the name Nate Whipple Radiology, Inc.[1] Subsequent to the sale of its assets, Dr. Entezary has worked as an hourly employee of the practice, but he is no longer a stockholder or officer of it.

14. Prior to the sale of the practice to Dr. Gunasti, Dr. Entezary was approached by Defendants Dr. Solomon and Dr. D'Allessandro, on behalf of Defendant Lincoln Urgent Care, a medical practice located in the same office building. Doctors Solomon and D'Allessandro had been told that Dr. Entezary might be in the market for a bone density machine and asked Dr. Entezary if he and his practice might be interested in assuming the lease of a bone density machine that they had been using in their medical practice (the "Machine").

15. Defendants Doctors Solomon and D'Allessandro informed him at that time that they were making monthly lease payments of approximately $600.00 a month on the Machine. Dr. Entezary also learned that the lease on the Machine was long-term, and would continue for at least several more years.

[1] While Dr. Entezary had done business under the name "Nate Whipple Radiology," the practice was only incorporated after it was purchased by Dr. Gunasti.

16. In connection with this discussion, Dr. Entezary had the Machine inspected and appraised. Based upon the appraisal and inspection, Dr. Entezary was informed that the Machine was outmoded and had been rendered obsolete by the recent development of other equipment that performed the same functions more accurately and efficiently.

17. Dr. Entezary also was informed that the costs of moving and recalibrating the Machine -- even if he were interested in doing so -- would be extremely high, possibly approaching $10,000.00.

18. For all of these reasons, Dr. Entezary declined the offer of Doctors Solomon and D'Allessandro to assume the lease of the Machine.

19. Some time in the Summer of 2003 -- well after Defendant Dr. Gunasti purchased and incorporated Nate Whipple Radiology -- Dr. Gunasti approached Dr. Entezary (who was then working as an hourly employee of Nate Whipple Radiology) and told him that Doctors Solomon and D'Allessandro had approached him and asked him if Nate Whipple Radiology (now owned by Dr. Gunasti) would be willing to assume the lease on the Machine.

20. Dr. Entezary informed Dr. Gunasti that he had previously rejected an offer to do so because of his belief that the Machine was a "clunker" -- outdated and inefficient. In addition, he pointed out to Dr. Gunasti that Nate Whipple Radiology had recently purchased newer and better equipment that performed the same functions.

21. At that point in their conversation, Dr. Gunasti informed Dr. Entezary that Doctors Solomon and D'Allessandro had promised Dr. Gunasti that, if Nate Whipple Radiology would assume the lease on the Machine, their practices and Lincoln Urgent Care would refer most of their CAT scans and MRIs to Nate Whipple Radiology.

22. Dr. Entezary immediately expressed to Dr. Gunasti his concern that such an arrangement would be illegal and could amount to Medicare fraud. In response to the concerns voiced by Dr. Entezary, Dr. Gunasti stated words to the effect of, "How are they going to find out?" At this point in the conversation, Dr. Entezary had become somewhat agitated, and stated in a raised voice words to the effect of, "Don't do it. It's unethical."

23. After this conversation took place, it was Dr. Entezary's understanding that Dr. Gunasti had heeded his advice by not entering into the proposed transaction.

24. Dr. Entezary later learned in a conversation with Nate Whipple Radiology's Office Manager that the practice had, indeed, assumed the lease payments on a bone density machine previously used by Lincoln Urgent Care.

25. It is Dr. Entezary's belief that this was the same bone density machine that he had previously discussed with Dr. Gunasti.

26. Upon information and belief, the Machine is not being used by Nate Whipple Radiology (or any other medical practice), but is presently being stored (but not used) in the medical offices of Dr. Gunasti's spouse.

27. Upon information and belief, Defendants are now and have been referring the CAT scans and MRIs to Nate Whipple Radiology as a result of the illegal agreement that Dr. Gunasti had discussed with Dr. Entezary.

28. Also upon information and belief, the CAT scans and MRIs illegally being referred to Nate Whipple radiology by Lincoln Urgent Care, Doctor Solomon and Doctor D'Allessandro have resulted in fraudulent claims being made to Medicare in the amount of many hundreds of thousands of dollars per year, and may approach a million dollars a year.

**Count I**
**False Claims Act Violations**
**(Anti Kick-Back Statute)**

29. The allegations contained in Paragraphs 1 through 28 are realleged as if fully set forth below.

30. Title 42 U.S.C. § 1320(a)-7b(b), the Medicare Fraud and Abuse Anti-Kickback Statute, reads in relevant part:

> **Illegal remunerations.** (1) Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind-
>
> > (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
> >
> > (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.
>
> (2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person-
>
> > (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under [a Federal health care program] title XVIII [42 USCS §§ 1395 et seq.], a State health care program, or
> >
> > (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

31. The law is now well-established that a violation of the Anti-Kickback Statute will create a private right of action under the False Claims Act.[2]

32. Defendants Dr. Solomon, Dr. D'Allessandro and Urgent Care have violated the Anti-Kickback Statute at 42 U.S.C. § 1320(a)-7b(b)(1)(A) by referring Medicare eligible patients to Nate Whipple radiology in exchange for its agreement to assume an unfavorable lease for medical equipment, as described above.

33. Defendants Dr. Gunasti and Nate Whipple Radiology violated the Anti-Kickback Statute at 42 U.S.C. § 1320a-7b(2) by accepting referrals of Medicare eligible patients in exchange for its agreement to accept Urgent Care's unfavorable lease on the Machine, as described above.

34. The United States has been damaged as a result of Defendants' violations of the Anti-Kickback Statute.

35. Said violations of the Anti-Kickback Statutes constitute a violation of 31 U.S.C. § 3729(a)(1) and (a)(2) by virtue of Defendants' certifications, implied and explicit, that they have complied with all applicable law relating to Medicare claims, and such violations have thereby damaged the United States Government by their actions in an amount to be determined at trial.

---

[2] *See, e.g., United States ex rel., James M. Thompson v. Columbia/HCA Healthcare Corporation*, 125 F.3d 899, 902 (5th Cir. 1998) (holding that violations of Stark Law physician referral provisions was redressible under false claims act as defendant's certification for Medicare that it had complied with applicable law was a "false or fraudulent" claim made to the government); *United States ex rel., Kneepkins v. Gambco Healthcare, Inc.*, 115 F. Supp. 2d 35, 43 (D. Ma. 2000) (holding that violations of Anti-Kickback Statute were actionable under the False Claims Act); *United States, ex rel., Gublo v. Novacare, Inc.*, 62 F. Supp. 2d 347, 355 (D. Ma. 1999) (recognizing that violations of Stark Law and Anti-Kickback Statute are actionable under the False Claims Act); *United States, ex rel., Pogue*, 914 F. Supp. 1507 (M.D. Tn. 1996) (same); *United States ex rel., Roy v. Anthony, M.D.*, 915 F. Supp. 1504 (S.D. Oh. 1994) (same).

**Count II**
**False Claims Act Violations**
**(Stark Law)**

36. The allegations contained in Paragraphs 1 through 35 are realleged as if fully set forth below.

37. The Stark Law provides that, unless certain exceptions apply:

> if a physician (or an immediate family member of such physician) has a financial relationship with an entity . . . , then
>
> (A) the physician may not make a referral to the entity for the furnishing of designated health services for which payment otherwise may be made under this title, and
>
> (B) the entity may not present or cause to be presented a claim under this title or bill to any individual, third party payor, or other entity for designated health services furnished pursuant to a referral prohibited under subparagraph (A).

(42 U.S.C. § 1395nn(a)).

38. "Financial Relationship" is defined to include "a compensation arrangement between the physician (or an immediate family member of such physician) and the entity." *Id.*

39. Defendants, by their above-described conduct, violated the Stark Law, causing the government damages.

40. Under well-established law, Defendants' violations of the Stark Law may be redressed pursuant to the False Claims Act.

**Prayer for Relief**

Relator Dr. Entezary, on behalf of himself and the United States Government, prays:

> (a) That this Court enter judgment against the Defendants in an amount equal to three times the amount of damages the United States Government has sustained because Defendants' actions, plus a civil penalty of $5,000.00 to $10,000.00 for each violation of 31 U.S.C. § 3729, and the costs of this action, with interest, including the costs to the United States Government for its expenses related to this action;

(b) That the Relator be awarded all costs incurred, including reasonable attorneys' fees;

(c) That, in the event the United States Government continues to proceed with this action, the Relator be awarded an amount for bringing this action of at least 15%, but not more than 25% of the proceeds of the action or settlement of the claim;

(d) That, in the event that the United States does not proceed with this action, the Relator be awarded an amount that this Court decides is reasonable for collecting the civil penalty and damages, which shall not be less than 25% nor more than 30% of the proceeds of the action or the settlement;

(e) That the Relator be awarded prejudgment interest;

(f) That a trial by jury be held on all issues; and

(g) That the United States Government and the Relator receive all relief, both in law and in equity, to which they may reasonably appear entitled.

UNITED STATES *ex rel*,
FAKHREDDIN ENTEZARY, M.D.,

By His Attorneys,

Charles S. Beal (#5559)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: October 7, 2005

**JURY DEMAND**

Relator hereby demands a trial by jury of all claims so triable.

Charles S. Beal

G:\csb\Entezary, F\pldgs\complaint.doc